GLADNEY, Judge
(dissenting).
In holding the negligence of Dr. C. W. Guice in the operation of his Mercury automobile was contributory to the tragic injuries sustained by plaintiff near midnight of October 20, 1955, the decision of the majority of this court is manifestly in error. The opinion finds Dr. C. W. Guice was negligent in failing to timely observe and realize D. W. Robison would disregard a red light, speed into the intersection, and thus? precipitate the intersectional collision which indirectly brought about the injuries of plaintiff. The decision holds that if Dr. Guice had been more alert he could have avoided the accident. With this conclusion I disagree, for conclusive facts have been established to my satisfaction which show complete absence of negligence by Dr. Guice.
*581 The important and controlling factors exonerating Dr. Guice, the driver of the Mercury, are tersely set forth below:
The locus or point of impact: This was located by Officer C. E. Nunley of the Shreveport Police force in the intersection of Claiborne and Linwood, 16 feet south of the north curb of Claiborne and 16 feet west of the east curb of Linwood. Officer Nunley found tire prints registered by Dr. Guice’s car leading up to the point of impact from a point 4 feet west of the west curb of Linwood, or a total length of 28 feet. The Robison vehicle made no tire prints prior to the collision, but thereafter skidded 79 feet to strike plaintiff. These facts are not disputed. The inference from these physical facts is: first, the brakes of the Mercury were locked 28 feet distant from the point of impact; and second, the Guice vehicle skidded 24 feet into the intersection while Robison moved 14 feet into the intersection without being affected by any application of his brakes.
The relative speed of the two vehicles in the proximity of the intersection is conclusively established. That of Robison was shown to have been in excess of 50 miles per hour and that of Dr. Guice was 30 miles per hour. The lawful maximum speed in effect was 35 miles per hour. In this connection the table prepared by H. B. Barret that accompanies his article “Mechanics of Control and Lookout in Automobile Law”, 14 Tulane Law Review, 493, 503, is pertinent and reveals that at 50 miles per hour Robison was moving at a velocity of 73.3 feet per second, while Guice at 30 miles per hour was proceeding 44 feet per second; that at 30 miles per hour under excellent stopping conditions which existed in this instance, a total of 68.3 feet is required to come to a complete stop, which distance includes 35.3 feet net braking distance and 33 feet reaction time. To negotiate the full 68.3feet requires 2.35 seconds, which includes 1.60 seconds as the net braking time and .75 of a second for reaction time. Inference : Dr. Guice began to “hit the brakes” 61 feet from the point of impact and his vehicle contacted the Robison car 7.3feet before a normal complete stop would have been achieved. To arrive at" the exact time it took the Mercury to cross; the 61 feet we have made allowance for the 7.3feet mentioned, and calculate the time consumed for the 61 feet was 2.03 seconds or approximately 2 seconds. Thus, wheri-Guice was 61 feet from the point of impact Robison was 146.6 feet from the same' point. It follows then that when Dr. Guice was 37 feet west of the intersection Robison was 132.6 feet south of the intersection.
The third important factor in testing the negligence of Dr. Guice relates to his ability to see across the southwest corner of the intersection in order to observe motor vehicles on Linwood approaching the intersection from the south. Certain obstructions are conclusively shown. First, the presence' of Mrs. J. C. Foster’s house at 1603 Claiborne, rather close to Linwood and about 56 feet south of Claiborne; second, a hedge along the west side of the Foster lot; and third, a dip or declination of Linwood looking south from the subject intersection. Without going into a lengthy discussion of these obstacles to a motorist’s view while traveling east on Claiborne toward the intersection, the record discloses Officer Nun-ley testified after his examination of the scene, that he found from a point on Claiborne four car lengths west of the intersection one could see but four car lengths south of the intersection along Linwood. > By using a length of 17 feet for each vehicle then a motorist when 68 feet west of • Linwood and traveling as was Dr. Guice on ■ Claiborne, could see a vehicle proceeding north on Linwood only when it was 68 feet south of the intersection. Furthermore, the fact is inescapable that the farther Dr. ■ Guice was from the intersection 'the less> distance he could see to the south along ■ Linwood. And conversely, the closer he ■ came to the intersection, the farther he could see south along Linwood.
The uncontroverted fact is that Dr. Guice realized the impending danger of a collision when he reached a point 37 feet west *582 of the intersection and immediately reacted in a prudent manner. The foregoing facts evidenced by the record are not denied, hut in fact, are conceded by counsel for all parties.
To reach any other conclusion than total absence of negligence on the part of Dr. Guice is manifest error, and I therefore, respectfully dissent from the majority opinion of this court.
Rehearing denied;
GLADNEY, J., dissents.